# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 1, 2002

## STATE OF TENNESSEE v. ADRIANNE ELIZABETH NOLES

**Appeal from the Circuit Court for Haywood County**
**No. 4753     Clayburn L. Peeples, Judge**

---

**No. W2002-01558-CCA-R3-CD - Filed December12, 2002**

---

Pursuant to Tennessee Code Annotated section 39-13-213(a)(1) (1997), the defendant, Adrianne Elizabeth Noles, was charged with vehicular homicide by recklessness in the Haywood County Circuit Court. She submitted a guilty plea to the charge, a Class C felony, and agreed to have the trial court determine the length and manner of service of her sentence. After a sentencing hearing, the trial court imposed a three-year sentence to be served in the Department of Correction. Aggrieved of the trial court's rejection of any sentencing alternative to incarceration, she appeals. We affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed and Remanded.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Tom Crider, Trenton, Tennessee (at trial), and Joyce Diane Blount, Trenton, Tennessee (on appeal), for the Appellant, Adrianne Elizabeth Noles.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; and Garry G. Brown, District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The conviction stems from events of October 14, 2001, that unfolded on Interstate 40 in Haywood County. Based upon facts gleaned from the presentence report and testimony introduced in the sentencing hearing, the defendant, who was 20 years old, was driving west on Interstate 40, accompanied by a male friend and her four-year-old son. She was traveling from Nashville to Arkansas and was approximately 30 minutes west of Nashville when a car pulled up behind her, shined its high beams into the defendant's car, then pulled around and in front of the defendant's car and braked. She was initially angered and later somewhat frightened as the two cars jockeyed in front of each other, sometimes reaching speeds of 90 miles per hour. At least once, the

other car, which was occupied by two young Hispanic males, disappeared but after a half hour or so, it reappeared behind the defendant's car with high beams activated.

This "cat-and-mouse" activity continued until the cars reached Haywood County, where the occupants of the other car began throwing objects at the defendant's car. At some point, according to the defendant, an object was thrown through her car window. As she attempted to reach for the unknown object, the other car pulled in front of her and braked.

The defendant had no recollection of losing control of her car, crossing the Interstate median, or colliding with the east-bound vehicle driven by the victim, Joseph Cooper. Mr. Cooper died from injuries sustained in the accident. The defendant and her male companion were hospitalized but recovered from their injuries. The defendant's child, riding in the rear seat of the defendant's car, was uninjured.

The post-accident blood test performed on the defendant was negative for drugs or alcohol. Although the defendant admitted that she had used cocaine two days before the accident, the record contains no proof that her October 14 actions were influenced by the drug.

In the sentencing hearing, the victim's mother and first cousin offered "victim impact" testimony. The victim was an industrious young man who was devoted to his mother, his four-year-old daughter, and other members of his family. Understandably, his loss was grievous to the family, especially to his young daughter.

The defendant testified that she deeply regretted her actions on October 14 that resulted in the loss of the victim's life. She admitted that she had driven at speeds up to 90 miles per hour but denied that she had been weaving in and out of traffic, as was alleged in the presentence report. She admitted that she could have left the Interstate at any one of a number of exit ramps and that she declined to do so. She did not know the men in the other car. She gave no thought to the risks posed to her son in the rear seat.

The presentence report revealed that the defendant began using marijuana and cocaine when she was thirteen years old. She had undergone treatment, including residential treatment in the past. She asked the court to avail her the opportunity to enter an eighteen-month treatment program that offered drug rehabilitation and parenting skills education. She had thoroughly researched the availability and aptness of the specific program that she described and testified that she would be accepted into the program, if the court permitted, and that she would acquire a Graduate Equivalency Diploma while in the program. Her great aunt and great uncle testified and confirmed the tentative arrangements in the treatment program. They assured the court that the defendant was genuinely remorseful about the victim's death, saying that she had expressed anguished empathy for the victim; he, like her, was the parent of a four-year-old child.

The presentence report also revealed that the defendant, at age 18, was convicted in Arkansas of "speeding (50 in a 40 MPH zone)" and driving without a driver's license. At age 17,

she was convicted in Williamson County, Tennessee of "speeding (69 in 40 MPH zone)." The defendant's juvenile record consisted of an adjudication of shoplifting.

The trial court imposed the Class C felony, Range I minimum sentence of three years. *See* Tenn. Code Ann. § 40-35-112(a)(3) (1997). It ordered the entire sentence served in confinement. On appeal, the defendant limits her grievance to the trial court's rejection of alternative sentencing. Following our review, we affirm the trial court's order of incarceration.

Before we begin our analysis, we note that no transcript of the defendant's plea submission hearing appears in the record. A plea-submission hearing transcript would have contained a factual basis for the court accepting the guilty plea. *See* Tenn. R. Crim. P. 11(f). "We have repeatedly held that failure to include the transcript of the guilty plea hearing in the record prohibits this court from conducting a meaningful *de novo* review of the sentence." *State v. Jorge Obdulio Herrera,* No. E1999-00118-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Knoxville, July 20, 2000). The defendant, as the appellant, is obliged to furnish this court with a fair, accurate, and complete record of what transpired in the trial court with respect to the issues that form the bases of the appeal. Tenn. R. App. P. 24(b); *State v. Banes*, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993); *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). In the absence of such a record, the affected issues are waived. *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). However, we also have commented that occasionally we can "reconstruct . . . an undisputed version of the factual events of the crime" from the "bits and pieces" of the record on appeal. *See Jorge Obdulio Herrera*, slip op. at 2-3, n.l. In the present case, the record of the sentencing hearing, including the presentence report, affords us an adequate view of the nature and circumstances of the conviction offense. Thus, we proceed to the appellate issue at hand.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id.* If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

An alternate sentence is any sentence that does not involve total confinement. *See generally State v. Fields*, 40 S.W.3d 435 (Tenn. 2001). A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (1997). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of

-3-

society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." *Id.* § 40-35-102(5) (1997). Thus, a defendant who meets the above criteria is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the Act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

The presumption of favorable candidacy for alternative sentencing may be rebutted by "evidence to the contrary." *Fields*, 40 S.W.3d at 440.

> Guidance as to what constitutes evidence to the contrary may be found in the following sentencing considerations contained in Tennessee Code Annotated section 40-35-103(1) (1997):
>
> > (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> >
> > (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is especially suited to provide an effective deterrence to others likely to commit similar offenses; or
> >
> > (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

*Id.* When the presumption of favorable candidacy for alternative sentencing applies and the state seeks to rebut it via Code section 40-35-103(1)(B) by showing that confinement is necessary to avoid depreciating the seriousness of the offense, a resulting trial court decision to impose total confinement must be predicated upon a finding that the nature and circumstances of the offense are "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring probation. *State v. Travis*, 622 S.W.2d 529, 534 (Tenn. 1981); *see State v. Hartley*, 818 S.W.2d 370, 375 (Tenn. Crim. App. 1991) (*Travis* qualifiers of nature and circumstances of offense have been codified in section 40-35-103(1)(B) which considers confinement to avoid depreciating the seriousness of the offense).

"Sentencing decisions should not, however, turn on a generalization of the crime committed, such as the fact that a death occurred." *State v. Housewright*, 982 S.W.2d 354, 356 (Tenn. Crim. App. 1997) (citing *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995)).

The defendant, a Range I offender, enjoyed the presumption of favorable candidacy for alternative sentencing for her Class C felony. *See* Tenn. Code Ann. § 40-35-102(6) (1997). Moreover, she was eligible for probation. *See id.* § 40-35-303(a) (1997).

In the present case, the trial court referred to the sentencing principles but did not refer specifically to Code section 40-35-103 in determining that a sentence of total confinement was appropriate. If a trial court ignores the governing statute on rebutting the presumption favoring alternative sentencing in imposing a sentence of total confinement, we should generally review the sentence *de novo*, without a presumption of correctness. *See Fields*, 40 S.W.3d at 440-41. However, in the present case, we believe the presumption of correctness applies because the trial court tacitly alluded to section 40-35-103 and to *Travis/Hartley*.

The trial judge "specifically [found] that the Defendant in order to maintain the moral symmetry between crime and punishment in a situation like this should serve three years in the State Penitentiary as a Standard Offender." We comprehend this statement to refer to the need to avoid depreciating the seriousness of the offense. *See* Tenn. Code Ann. § 40-35-103(1)(B) (1997). He also found "that this is just about as aggravated as a vehicular homicide by recklessness can be[,] . . . that the Defendant is guilty of gross recklessness in operating her vehicle. She injured a passenger. She had a child [] four years old." Thus, the trial court found that the nature and circumstances of the offense were especially reprehensible and exaggerated. *See Travis*, 622 S.W.2d at 534.

We agree with this assessment. The fatal accident which the defendant caused was not just the result of some fleeting moment of inattention; rather, it resulted from a high-speed "cat-and-mouse" game which covered approximately 100 miles of Interstate 40. Furthermore, the defendant did not come before the sentencing court with the cleanest of hands. She had previously been convicted of two speeding offenses, and one of those additionally involved her driving without a license. Not only did the defendant's recklessness result in the victim's death, but it imperiled both passengers in her car, including her four-year-old son. When asked in the sentencing hearing whether she realized that her conduct endangered her child, the defendant said, "No, sir. I didn't think about that." Finally, the collision resulted in bodily injury to the defendant's adult male companion; he spent twelve days in the hospital.[1] In our view, these circumstances warrant the trial court's finding that the nature of the offense was exaggerated. Based upon the aptness of this finding, the trial court's imposition of a sentence of confinement is warranted.

We notice that the conviction judgment does not provide for the prohibition from driving of a defendant convicted of vehicular homicide that is mandated by Tennessee Code Annotated section 39-13-213(c) (1997). Pursuant to that Code section, the trial court must impose a driving prohibition for a period of time "not less than three (3) years nor more than ten (10) years." *Id*. Thus, on remand, the trial court shall revise the judgment to comply with section 39-13-213(c).

Otherwise, we affirm the trial court's judgment.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[1] The companion did not appear at the sentencing hearing. The defendant testified about his hospitalization, but she was uninformed about the nature and extent of his injuries.